IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DION BENSON, | Case No. 1:18-cv-348 Erie |
| Plaintiff | |
| v. | RICHARD A. LANZILLO |
| | UNITED STATES MAGISTRATE JUDGE |
| JOHN WETZEL, et al., | |
| | ORDER ON DEFENDANTS' MOTION |
| Defendants | TO DISMISS [ECF NO. 16] |

I.  Background

Plaintiff Dion Benson, an inmate incarcerated at the State Correctional Institution at Forest (SCI-Forest), initiated this pro se action on November 1, 2018, pursuant to 28 U.S.C. § 1983. ECF No. 1. In his Complaint, Benson asserts that Defendants violated his civil rights as secured by the Eighth and Fourteenth Amendments to the United States Constitution by spraying him with Oleoresin Capsicum Spray (O.C. Spray) in violation of prison policy. Benson seeks compensatory damages by way of relief.

The incident at the heart of Benson's allegations occurred on November 2, 2016. ECF No. 4 ¶ 12. According to his Complaint, Benson was standing near his counselor's office when Defendant Lehnhart, a sergeant assigned to F-Unit inmate housing, without provocation, sprayed him in the face, neck, nose and back with O.C. Spray. ECF No. 4 ¶ 12. Lehnhart then placed Benson in the Restricted Housing Unit (RHU) and issued him a misconduct for failing to obey orders. *Id.* ¶¶ 13-14. Since the incident, Benson has required medical treatment. *Id.* ¶ 26. He contends that the use of O.C. Spray was unwarranted and violated DOC policies and procedures. *Id.* ¶ 27.

Presently pending is a motion to dismiss for failure to state a claim filed by three Defendants: John Wetzel, the Secretary for the Pennsylvania Department of Corrections (DOC); M.D. Overmyer, the Superintendent of SCI-Forest; and Captain Carter, the Captain of Security at SCI-Forest.[1] ECF No. 16. For the reasons that follow, Defendants' motion will be granted.[2]

II. Standards of Review

A. Pro se Litigants

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same).

---

[1] The fourth Defendant in this action, Sergeant Lehnhart, did not file a motion to dismiss.

[2] The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1367. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636.

2

B. Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). *See also McTernan v. City of York, Pennsylvania,* 577 F.3d 521, 531 (3d Cir.

3

2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

III. Analysis

Defendants concede that Benson has stated a viable Eighth Amendment claim against Lehnhart, the officer who actually sprayed him with O.C. Spray. However, Wetzel, Overmyer, and Carter (collectively, the "Supervisory Defendants") contend that each of them must be dismissed from this action because: (1) Benson's claims against them in their official capacities are barred by the doctrine of sovereign immunity; and (2) Benson has failed to allege their personal involvement in the deprivation of a constitutional right. Each argument will be addressed in turn.

A. Official Capacity Claims

Defendants first contend that Benson's official capacity claims are barred by the immunity afforded to the Commonwealth of Pennsylvania by the Eleventh Amendment. It is axiomatic that "the Eleventh Amendment proscribes actions in the federal courts against states,

4

their agencies, and state officials acting within their official capacities." *See, e.g., O'Donnell v. Pennsylvania Dept. of Corrections*, 790 F.Supp.2d 289, 305 (M.D. Pa. 2011) (citing *Seminole Tribe v. Florida*, 517 U.S. 44, 54 (1996)). As a department of the Commonwealth of Pennsylvania, the DOC is immune from suit in federal court unless, *inter alia*, said immunity has been abrogated by Congress or waived by the state.[3] *MCI Telecomm Corp. v. Bell-Atlantic-Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001). *See also Lavia v. Pennsylvania, Dept. of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000) (noting that, as an agency of the Commonwealth of Pennsylvania, the DOC is entitled to assert the immunities afforded by the Eleventh Amendment). Moreover, "[b]ecause the Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities." *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011).

It is well-settled that "Pennsylvania has not waived its immunity from suit in federal court." *Toth v. California Univ. of Pennsylvania*, 844 F.Supp.2d 611, 648 (W.D. Pa. 2012) (citing 42 Pa.C.S.A. § 8521(b)). Nor did Congress intend by the general language of Section 1983 to override the traditional sovereign immunity afforded to the states. *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979); *see also Toth*, 844 F.Supp.2d at 648. Consequently, the Defendants – each of whom is an official, officer, or employee of the Commonwealth of Pennsylvania – are entitled to immunity from any monetary claims against them in their official capacities. Defendants' motion to dismiss on this basis should be granted.

---

[3] A third exception to sovereign immunity permits a plaintiff to sue individual state officers for prospective relief to end an ongoing violation of federal law. No such claim is asserted in this case.

5

B. Lack of Personal Involvement

In order to prevail on a claim pursuant to 42 U.S.C. § 1983, a plaintiff must prove that a defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005); 42 U.S.C. § 1983. Critically, the plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 F. App'x 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendants are supervising prison officials. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[L]iability cannot be predicated solely on the operation of *respondeat superior*."). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her

subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Moreover, it is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013). *See also Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Rather, a supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm; or (2) participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

Benson's claims against the Supervisory Defendants in this action take three basic forms: (1) claims based on their role in the grievance process; (2) claims based on the alleged violation and/or improper promulgation of policy or practice; and (3) claims based on a failure to train. Each will be discussed in turn.

1. Improper grievance responses

In his Complaint, Benson's allegations against the Supervisory Defendants focus primarily on their involvement in the administrative grievance process. Throughout his pleading, Benson appears to suggest that the Supervisory Defendants failed to properly investigate his grievances, improperly denied his grievances, and filed "untruthful" grievance responses in order to cover up the alleged assault. *See* ECF No. 4 ¶¶ 17-20, 22, 25, 32-34, 36-37, 39. As described

7

above, these types of averments are insufficient to establish personal involvement in the deprivation of a constitutional right. *See, e.g., Mincy v. Chmielsewski,* 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018) (allegation that supervisory defendant was "made aware of several issues of the plaintiff's and . . . failed to help him" is insufficient to state a claim for reliefs). To the extent that Benson bases his claims on defects in the grievance process, those claims must be dismissed, with prejudice.

    2. Policy or practice liability

Benson next alleges that the Supervisory Defendants "faile[ed] to follow their own rules, regulations or policies" concerning the protection of prisoners. However, the cited policies relate entirely to the grievance process. For example, Benson accuses the Supervisory Defendants of violating policy by denying Benson's grievances to "cover up the assault." *See, e.g.*, ECF No. 4 ¶ 33 (Carter abused his authority by denying Benson's grievance in order to perpetuate a cover up); ¶ 34 (Overmyer reached a different conclusion than Benson after reviewing the video evidence and subsequently denied his grievance appeal); ¶ 39 (Wetzel, Overmyer and Carter "knew the deploying of O.C. Spray was not warranted" but fraudulently denied Benson's grievance in violation of DOC policy and procedures). As noted above, "an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement." *Mincy*, 508 Fed. Appx. at 104.

In his brief in response, Benson proffers an alternative (and novel) argument: that the Supervisory Defendants established an illegal policy or practice by allowing corrections officers to possess and use O.C. Spray within the prison despite that Pennsylvania law prohibited such

8

use. Although it is not entirely clear, Benson appears to believe that O.C. Spray was illegal to possess within a prison – even for a prison guard – until after the Pennsylvania Assembly passed Act 174 of 2016 (enacting 61 Pa. C.S.A. § 5907) on November 21, 2016. ECF No. 25 ¶ 15. Benson maintains that the presence of O.C. Spray within the prison prior to that date stemmed from "a policy in violation of state law which allowed the introduction of contraband OC Spray into the facility and consented to its use on inmates." *Id.* ¶ 20-22, 28.

Contrary to Benson's representation, the referenced statute, 61 Pa. C.S.A. § 5907, provides only that the DOC "shall issue, on a routine basis, oleoresin capsicum stray to . . . [a]ny officer or employee of the department who . . . is employed by and on duty in a State correctional institution." 61 Pa. C.S.A. § 5907. Nothing in the statute – which, again, <u>mandates</u> the provision of O.C. Spray to corrections officers – suggests that the use of O.C. Spray as a penological tool by a corrections officer had previously been prohibited. To the contrary, courts routinely rejected inmates' challenges to the use of O.C. Spray in prisons prior to the enactment of § 5907, so long as that use was otherwise consistent with the Eighth Amendment. *See, e.g., Banks v. Mozingo*, 423 Fed. Appx. 123, 126-27 (3d Cir. 2011) (noting that the use of pepper spray or mace "does not in itself amount to an Eighth Amendment violation"); *Jackson v. Beard*, 2016 WL 3621279, at *8 (M.D. Pa. Mar. 31, 2016) ("[C]ourts have consistently found that an isolated discrete use of pepper spray does not state an Eighth Amendment claim."). Benson's allegation that the use of O.C. Spray prior to the enactment of § 5907 necessarily resulted from an illegal policy or practice will be dismissed, with prejudice.

3. Failure to train

Finally, Benson contends that the Supervisory Defendants failed to provide adequate and proper training as to the appropriate use of O.C. Spray. "A supervising authority may be liable

under § 1983 for failing to train . . . when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact." *Gilles v. Davis*, 427 F.3d 197, 207 n. 7 (3d Cr. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To prevail, the plaintiff must "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). In the failure to train context, deliberate indifference can be established by demonstrating that: "(1) [the supervisor knew] that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 Fed. Appx. 628, 632 (3d Cir. 2018) (quoting *Doe v. Luzerne County*, 660 F.3d 169, 179 (3d Cir. 2011)). *See also Van Valen v. Lanigan*, 2019 WL 1326887, at *6 (D.N.J. Mar. 25, 2019) (noting that a plaintiff must "show that policymakers were on actual or constructive notice that flaws in their training or supervision caused subordinate officials to violate citizens' constitutional rights, and such notice generally requires contemporaneous knowledge of an incident or knowledge of a prior pattern of similar incidents and circumstances.") (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Here, Benson has identified a specific type of training that he believes should have been provided: training in the proper use of O.C. Spray. He has also alleged a causal connection between his injuries (each of which stemmed from the allegedly improper use of O.C. Spray) and the absence of that specific training. Benson has failed, however, to plead any facts from which the Court might infer that the absence of that training "reflect[ed] a deliberate indifference to

10

whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145. For example, there is nothing in the pleadings to suggest that Wetzel, Overmyer, or Carter were aware that correctional officers had a history of abusing O.C. Spray or that similar incidents or occurrences had occurred in the past. In the absence of such allegations, Benson's failure to train claim must fail. Because the Court concludes, however, that amendment of this claim would not be futile, Benson will be provided an opportunity to file a curative amendment.

C. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

The Court concludes, as a matter of law, that Benson cannot establish a constitutional violation based on the Supervisory Defendants' grievance responses or their alleged failure to adhere to a prison policy or practice (or promulgation of an illegal policy or practice). Leave to amend these claims will be denied as futile.

It is not clear that amendment would be futile with respect to Benson's failure to train claim. Accordingly, Benson will be granted leave to file an amended complaint within twenty-one (21) days of this order, if he wishes to do so. Benson is reminded that an amended complaint "must be complete in all respects. It is a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Williams v. Ferdarko*, 2018 WL 3653272, at *1 n. 1 (W.D. Pa. Aug. 1, 2018) (quoting *Young v. Keohane*, 809 F.Supp. 1185, 1189 (M.D. Pa. 1992)). In other words, his amended complaint will supersede (replace)

11

his original complaint and cannot simply incorporate the prior document by reference.[4] Conversely, Benson may also elect <u>not</u> to file an amended complaint, in which case the Supervisory Defendants will be dismissed from this action, with prejudice, and Benson's claims will proceed exclusively against Lehnhart.

V. Conclusion

For the reasons stated herein, the motion to dismiss filed by Wetzel, Overmyer and Carter [ECF No. 16] is GRANTED and the following is ORDERED:

(1) Benson's claims against all Defendants in their official capacities are dismissed, with prejudice.

(2) Benson's claims against the Supervisory Defendants based on their participation in the grievance process and violations of DOC policy and procedure are dismissed, with prejudice.

(3) Benson's claim against the Supervisory Defendants based on an alleged failure to train is dismissed, without prejudice. Benson may attempt to amend his complaint to state a failure to train claim against those Defendants within twenty-one (21) days of this order, if he so desires. Failure to file an amended complaint within that timeframe will result in dismissal of Wetzel, Overmyer and Carter from this action, with prejudice.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: June 6, 2019

---

[4] However, for Benson's convenience, and in acknowledgement of the difficulties inherent in litigating from prison, Benson need not resubmit the exhibits attached to his original Complaint.